JOSEPH F. SHANAHAN, APPELLANT, v. STATE BOARD OF EDUCATION, EDWARD W. KILPATRICK, ACTING COMMISSIONER OF EDUCATION, RESPONDENTS, ROBERT J. CORNELL, APPELLANT, v. STATE BOARD OF EDUCATION, EDWARD W. KILPATRICK, ACTING COMMISSIONER OF EDUCATION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 28, 1975—Decided March 13, 1975.

Before Judges MATTHEWS, FRITZ and BOTTER.

*Mr. Joseph F. Shanahan* argued the cause *pro se* and for appellant Cornell.

*Miss Jane Sommer,* Deputy Attorney General, argued the cause for respondents (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

A statement in lieu of brief was filed by *Mr. Robert J. T. Mooney,* attorney for Watchung Board of Education (*Messrs. Buttermore and Mooney,* attorneys).

The opinion of the court was delivered by

MATTHEWS, P. J. A. D. These are consolidated appeals from decisions of the State Board of Education in the matters of the annual school elections held in the school district of Lambertville, Hunterdon County, and the school districts of the Borough of Watchung and the Watchung Hills Regional High School, Somerset County, affirming decisions of the Commissioner of Education which overruled his prior decision that had directed that any list of voters' names compiled by challengers in school district elections should be destroyed to prevent their further use after the closing of the polls.

On February 13, 1973 a school election was held in the City of Lambertville school district in which appellant Shanahan is a resident and taxpayer. On February 22, 1973 Shanahan filed a letter of complaint with the Commissioner of Education charging that certain challengers employed at the polls in that election had left the polling places without destroying or disposing of the informal poll lists they had compiled. He requested the Commissioner to determine whether such lists had been kept by the challengers and, if so, to order them destroyed. He did not challenge the results of the election.

A hearing was held on Shanahan's petition before a hearing officer designated by the Commissioner. The hearing officer found that although the challengers who testified admitted that they had compiled informal polling lists during the election, there was no evidence either that they had removed their lists from the polling place or that such lists were still in existence at the time of the hearing. He therefore recommended that in the absence of any proof of Shanahan's allegation of election irregularities, his petition should be dismissed.

The Commissioner noted in his decision that the question raised by appellants had been considered previously in his decision, *In the Matter of the Annual School Election in the School District of the Borough of Watchung, Somerset County,* rendered May 11, 1972, which was affirmed by the State Board of Education. In that opinion the Commissioner found that it would not be improper for a challenger to prepare an informal poll list. However, he noted that by statute formal poll lists must be prepared, *N. J. S. A.* 18A:14–28, and that within five days of the election these lists together with other specified election materials must be forwarded in a sealed package to the county superintendent to be preserved for one year. *N. J. S. A.* 18:14–62. Therefore, he concluded that even though challengers' informal lists are not subject to the requirements of *N. J. S. A.* 18A:14–62, they should be destroyed following an election.

In reviewing Shanahan's petition the Commissioner reconsidered his May 11, 1972 decision and overruled it insofar as it required destruction of informal poll lists, because (1) the requirement had proven unenforceable, and (2) the list compiled by a challenger is an informal one reflecting only his observation of who has voted, while the official poll list which is the subject of statutory protection is an official compilation of voters' signatures used by election officials for purposes of comparison with the signature copy register to determine voters' eligibility to receive a ballot. *N. J. S. A.* 18A:14–51. Shanahan's petition was therefore dismissed.

Shanahan appealed the decision to the State Board of Education insofar as it overruled the 1972 Watchung holding. The State Board affirmed. It concluded that since, pursuant to *N. J. S. A.* 19:31–18.1, any voter, including a challenger, may purchase a copy of the voters' registry list from the county clerk, it was proper for a challenger to prepare an unofficial poll list by checking off names of voters on his own copy of the registry list, and thereafter retain and remove it from the polling place without legal impediment. The State Board further concluded that *N. J. S. A.* 18A:14–62, which requires sealing and protection of official poll lists, does not apply to unofficial lists informally compiled by challengers.

In the second action appellant Cornell filed a letter complaint with the Commissioner claiming that in a statement issued to the public on January 18, 1973 the board of education of the school district of the Borough of Watchung had indicated that it did not intend to require that challengers' informal poll lists be destroyed following the approaching school election. A hearing was held on that complaint before a hearing examiner designated by the Commissioner on the same day that the annual school election was held in the district.

Subsequently, Cornell filed complaints with the Commissioner charging that in the school district elections for both

the Watchung Hills Regional and Watchung Borough districts, election officials were advised by their respective school board secretaries that challengers could prepare lists of people voting and could retain those lists, contrary to the Commissioner's decision in the 1972 Watchung case which required destruction of challengers' lists. Cornell petitioned the Commissioner to investigate these alleged irregularities and to take appropriate action, should irregularities be found. He did not challenge the results of the elections.

A hearing was held on both complaints before a hearing examiner designated by the Commissioner. The Commissioner rendered a decision covering both complaints in which he overruled his earlier determination in the 1972 Watchung decision requiring destruction of challengers' informal poll lists for the same reasons set forth in his decision on Shanahan's petition. Accordingly, he dismissed both of Cornell's complaints.

Cornell appealed from this decision to the State Board of Education, which on March 6, 1974 affirmed the Commissioner's decision for the same reasons given in its affirmance of dismissal of Shanahan's petition on the same issue.

Both Shanahan and Cornell now appeal from the State Board's decisions. We consolidated the appeals by consent order.

. The issue in each of the consolidated matters before us is whether *N. J. S. A.* 18A:14–62, which requires that official poll lists be sealed for one year after the election in which they are compiled, imposes upon the State Board of Education by implication the duty to require that informal challengers' lists prepared during the same election be destroyed or otherwise kept from the public for one year. The issue may best be understood by reference to the statutory scheme establishing the school election process and the significance of poll lists within that process.

*N. J. S. A.* 18A:14–48 requires the designated clerk of a school district election to keep an official poll list at each polling place which is to be "arranged * * * in such manner

that each voter voting in the polling place at the election may sign his name and state his address therein and the number of his official ballot may be indicated opposite the signature."

Each voter who enters the polling place during the election must give his name and address to the election official in charge of the signature copy register. *N. J. S. A.* 18A:14-49. That register is the same signature copy book used in general elections and is provided for comparison purposes only to the school district by the commissioner of registration of the county. *N. J. S. A.* 18A:14-47, 18A:14-51. Before receiving a ballot a voter must sign his name on the official poll list, *N. J. S. A.* 18A:14-50, and that signature must be compared with the voter's signature in the signature copy register. *N. J. S. A.* 18A:14-51.

Immediately after the election the official poll list, the tally sheets and ballots are placed in a sealed package and delivered by the inspector of election at each polling place to the secretary of the local board of education, *N. J. S. A.* 18A:14-61, who, in turn, "within five days after the date of the election [shall] forward a sealed package containing a statement of the canvass of the votes in the school district, the ballots, including the irregular ballots, the poll lists and the tally sheets to the county superintendent who shall preserve them for one year." *N. J. S. A.* 18A:14-62.

Thus, public inspection of official poll lists is barred for one year after a school election unless a charge of irregularity is made.

A challenger's right to make an informal list of voters' names was established by the Commissioner and the State Board in the May 1972 Watchung decision, above, and is not at issue here. Appellants argue, however, that *N. J. S. A.* 18A:14-62 represents an attempt by the Legislature to keep the identity of voters at a school election concealed from the general public, at least until the following election. They suggest that if voters' identities are not so concealed, the integrity of the election process is somehow

harmed. They do not suggest that the outcome of either of the elections out of which these appeals arise was improperly affected, nor have they shown that the integrity of the election processes in either election has been harmed by the claimed availability of challengers' lists after the elections were concluded.

We find nothing in the statutory language or the statutory scheme to suggest that the sealing of the official poll lists for one year was intended to do any more than protect them as documentation of one school election for one year. Certainly, we find no indication that the requirement that those lists be sealed was designed to keep the identity of voters in one election secret until after the next ensuing election.

It is apparent that the official poll list required to be kept under *N. J. S. A.* 18A:14–48 is a perishable document easily susceptible to mutilation, destruction or alteration, compared, for example, to the official signature copy register required to be maintained under the general election laws. The legislative concern for the integrity of the school district election process by requiring the immediate sealing and depositing of such election records is more readily understandable when that fact is considered. We have recently recognized that concern in our determination that the provisions of *N. J. S. A.* 18A:14–61 and 62 are exceptions to *N. J. S. A.* 47:1A–1 *et seq.,* the Right to Know Law. *Shanahan v. N. J. State Bd. of Education,* 118 *N. J. Super.* 212 (App. Div. 1972). We do not read our opinion in *Shanahan* to suggest that the provisions of *N. J. S. A.* 18A:14–61 and 62 are designed to hide from the electorate the identity of the individual voters who cast their ballots in the most recent school district election. Rather, we recognized the legislative purpose of keeping the official election records, including the official poll lists, *physically* protected for the period of one year, absent a question of election irregularity.

■ ■ Finally, we find no merit to appellants' arguments that the decision of the State Board of Education is arbitrary and capricious in that it failed to consider the integrity of the school election processes which is described as the basic issue raised, and that the structure of the appeals system of the Department of Education is such that it denied procedural due process to them.

Affirmed.